**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROADGET BUSINESS PTE. LTD., a private limited company organized in the country of Singapore, <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO <br><br> Defendants. | CIVIL ACTION NO. 1:23-cv-16262 <br><br> Judge: Hon. Jeffrey I. Cummings |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' OPPOSED MOTION FOR REFERRAL TO THE REGISTER OF COPYRIGHTS UNDER 17 U.S.C. § 411(b)(2)**

I. **PRELIMINARY STATEMENT**

Defendants Peiwen Luo and Yijun Wu (Nos. 10 and 17 on Schedule A, respectively) move the Court under 17 U.S.C. § 411(b)(2) to refer to the Copyright Office the false ownership claims Plaintiff Roadget Business Pte. Ltd. ("Roadget") knowingly made in its applications for the Swag Bear copyright registrations (the copyright asserted against Defendants). The referral will allow the Copyright Office to advise the Court on a potentially dispositive issue in this case: whether the registration would have been refused had Roadget presented accurate information.

Roadget falsely told the Copyright Office that it was the owner of the Swag Bear copyright by a "written agreement" with Guangzhou Shein. Yet the alleged "written agreement" did not exist. According to Roadget, the written agreement was executed a month after Roadget falsely told the Copyright Office it had been executed. And, per the written agreement, the alleged transfer of the Swag Bear work to Roadget was made effective a month *after* Roadget falsely told the Copyright Office it was already the owner. The record also confirms Roadget, and its copyright agent, made this false ownership claim knowing full well Roadget was not the owner of the rights. The timeline of events is summarized as follows, derived from Roadget's allegations and evidence:

- **Dec. 3, 2020**: Soby Ou, the alleged author of the Swag Bear work, allegedly began working for Guangzhou Shein in a "work made for hire" relationship. *See* ECF No. 52-2 (unexecuted and allegedly translated employment agreement between Guangzhou Shein and Soby Ou).
- **In 2021**: Soby Ou allegedly completed the Swag Bear work, which allegedly transferred to Guangzhou Shein under the employment agreement. *See* ECF No. 5-1; ECF No. 52-2.
- **June 3, 2022 (Basic Registration)**: Roadget (not the author or owner) files an application for a copyright registration, falsely stating Roadget is both the author and owner of the Swag Bear work. Relying on this information, the Copyright Office issues the registration on June 29, 2022. ECF No. 5-1. The basic registration remains uncorrected for over a year.
- **Over a Year Later – June 13, 2023 (Supp. Registration)**: Roadget (still not the author or owner) files an application for supplementary registration (1) "correcting author from Roadget Business Pte. Ltd. to Guangzhou Shein Import Export International Co. Ltd.," (2) changing the "nation of first publication" from China to the U.S., and (3) falsely stating that the "[t]ransfer" of ownership from Guangzhou Shein to Roadget was done by an executed "written agreement." Relying on this information, the Copyright Office issues the supplementary registration on June 16, 2023. ECF No. 5-2.

2

- **A Month Later – July 13, 2023 (Deed of Assignment)**: Roadget and Guangzhou Shein allegedly execute a "Deed of Assignment of Copyright" dated July 13, 2023, purportedly transferring the Swag Bear rights. *See* ECF No. 54 at 5 (in PI Reply brief, Roadget asserting the "Deed of Assignment assigning the rights to the design to Roadget . . . establish[es] Roadget's rights to the 'Swag Bear' design"). The recital in the Deed of Assignment confirms that on July 13, 2023, "[Guangzhou Shein] [was] the owner of the Copyright." The Deed of Assignment then purports to assign the Swag Bear work to Roadget, effective July 13, 2023. *See* ECF No. 52-3 at § 2.1 ("with effect from the date of this Assignment [July 13, 2023]").

This timeline confirms Roadget twice falsely told the Copyright Office it was the owner of the Swag Bear work, and then falsely told the Copyright Office it obtained ownership through a written transfer agreement, which Roadget knew did not exist. While it can be inferred that a company and its copyright prosecution agent know what rights the company does and does not own, here additional evidence confirms without any doubt that Roadget and its copyright agent had actual knowledge of the false information it submitted to the Copyright Office.

The Seventh Circuit has confirmed that "an infringement plaintiff cannot satisfy [the registration] precondition by duping the Copyright Office into issuing a certificate of registration based on a false claim of copyright ownership," and the remedy for such conduct is to refer it to the Copyright Office under 17 U.S.C. § 411(b)(2) to advise the court whether the registration would have been refused had the claimant told the truth. *See DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 622 (7th Cir. 2013). Under Roadget's own version of the events, Roadget knowingly made a false claim of ownership to the Copyright office, and therefore, under 17 U.S.C. § 411(b)(2), the Court should grant the instant Motion and refer the matter to the Copyright Office.[1]

---

[1] Defendants address these issues through Roadget's alleged version of the events. Defendants note, and preserve their objections to, the authentication deficiencies in Roadget's evidence. For example, Roadget's purported authentication of the alleged chain-of-title contracts is solely made by Roadget's counsel of record in this action, *see* ECF No. 52-1 at ¶¶ 4, 5, which is not proper. *See Prime Healthcare Servs.-Monroe, LLC v. Indiana Univ. Health Bloomington, Inc.*, No. 16-cv-00003, 2016 WL 6818956, at *2 (S.D. Ind. Sept. 30, 2016) (defendant's counsel cannot authenticate company contract). Likewise, Roadget only submitted the alleged English-translated (and unexecuted) version of the Soby Ou employment agreement, but not the Chinese / executed version or an authenticated translation. *See Jiajie Zhu v. Jing Li*, No. 19-cv-02534, 2019

## II. LEGAL STANDARD

The Copyright Act provides: "A certificate of registration satisfies the [registration] requirements . . . regardless of whether the certificate contains any inaccurate information, unless (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). "In any case in which inaccurate information described under [section 411(b)(1)] is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1).

Under this framework, the Seventh Circuit has confirmed that the party seeking a referral must show "(1) the registration application included inaccurate information; and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office." *DeliverMed Holdings*, 734 F.3d at 625. "Once these requirements are met, a court may question the Register as to whether the inaccuracy would have resulted in the application's refusal." *Id*.

## III. ARGUMENT

The issue here is straightforward. First, copyright law is clear and unambiguous: In a copyright application, the applicant must truthfully identify the author and owner of the work, and truthfully describe the circumstances of transfer from the author to the applicant. Second, the facts are clear: Roadget twice falsely told the Copyright Office it was the owner of the Swag Bear work, and falsely told the Copyright Office it obtained ownership by a written transfer agreement with Guangzhou Shein. And Roadget knew these representations were false at the time they were made.

---

WL 6050961, at *5 (N.D. Cal. Nov. 15, 2019) (counsel's declaration as to the accuracy of a third-party translation of a contract is insufficient). However, for purposes of the instant Motion only, Defendants assume, but preserve objections to, the authenticity of this evidence.

A referral to the Copyright Office under 17 U.S.C. § 411(b)(1) is therefore appropriate.

### A. Copyright Applicants Must Provide Truthful Information Identifying the Author, the Owner, and How the Applicant Obtained Ownership.

An application for copyright registration must comply with the statutory requirements outlined in 17 U.S.C. § 409. In relevant part, the statutory requirements for copyright registration require the applicant to provide truthful information regarding "the name . . . of the author or authors," "in the case of a work made for hire, a statement to this effect," "the name and address of the copyright claimant" (*i.e.*, the owner), and "if the copyright claimant is not the author, a brief statement of how the claimant obtained ownership of the copyright." 17 U.S.C. § 409.

Copyright regulations explain that the term "claimant" means either "(i) [t]he author of a work; or (ii) [a] person or organization that has obtained ownership of all rights under the copyright initially belonging to the author." 37 C.F.R. § 202.3(a)(3). A footnote to 202.3(a)(3)(ii) states that "[t]his category includes a person or organization that has obtained, from the author . . . , the contractual right to claim legal title to the copyright in an application for copyright registration." 37 C.F.R. § 202.3(a)(3) n.1. The regulations further explain that an application may *only* be filed by the "author or other copyright claimant of a work, the owner of any exclusive right in a work, or the duly authorized agent of any such author, other claimant, or owner." 37 C.F.R. § 202.3(c)(1).

Therefore, not surprisingly, the Copyright Office will refuse registration if it learns that the purported claimant is not the author or owner. *See* U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICE § 1702 (3d ed. 2021) (listing reasons for refusal: "The applicant is not authorized to register a claim in the work." and "The claimant named in the application is not a proper copyright claimant."); *id.* § 620.10(C)(1) (describing unacceptable transfer statements and noting that the Copyright Office relies on representations from the claimant regarding the existence of a "written agreement").

The upshot is that Roadget was under an unambiguous and straightforward legal obligation to present accurate information as to the identity of the author, owner, and whether and how Roadget obtained ownership from the author. Roadget provided false information on this material subject matter, resulting in the Copyright Office issuing copyright registrations to Roadget.

### B. Roadget Twice Falsely Represented to the Copyright Office That It Was the Owner of the Swag Bear Work.

Seventh Circuit precedent confirms that an inaccurate representation to the Copyright Office regarding ownership, resulting in the issuance of a copyright registration, requires a referral to the Copyright Office under 17 U.S.C. § 411(b)(2). *See DeliverMed*, 734 F.3d at 623 (directing district court to refer false ownership claim to the Copyright Office).

The facts in *DeliverMed* are notably similar to this case. The district court invalidated DeliverMed's copyright registration based on DeliverMed's false ownership claim to the Copyright Office, and DeliverMed thereafter appealed to the Seventh Circuit. Like the present case, DeliverMed had filed a copyright application and falsely told the Copyright Office that "[the author] transferred [the rights] . . . to DeliverMed by written agreement." *DeliverMed*, 734 F.3d at 623. This representation was false, as the parties had not executed a written transfer agreement. Also like the present case, DeliverMed then purported to execute transfer agreements with the author after DeliverMed had obtained the registration from the Copyright Office. *Id*. The Seventh Circuit rightly found that the subsequent execution of any alleged transfer agreement did not cure the prior misrepresentation to the Copyright Office. *Id*. ("The fact that the parties later entered into an agreement does not transform [the] earlier misrepresentation into a true statement.").

However, while agreeing that invalidity of the copyright is likely the right ultimate outcome, the Seventh Circuit found error in the district court's ruling because it bypassed the Copyright Office's role under 17 U.S.C. § 411(b)(2) to advise the court as to whether the inaccuracy would

have resulted in refusal. *See* 734 F.3d at 624 ("The district court's reasoning seems consistent with the Register's practice [regarding refusal for ownership deficiencies]. But under section 411(b)(2), a court still must request a response from the Register before coming to a conclusion as to the materiality of a particular mis-representation."). Therefore, the Seventh Circuit remanded the case and directed the district court to refer the matter to the Copyright Office. *Id*. at 624 ("[T]he district court must ask the Register whether it would have refused DeliverMed's application had it been aware that DeliverMed had no written ownership transfer agreement at the time of its application.").

On remand, the district court promptly followed the Seventh Circuit's direction and referred the matter to the Copyright Office. *See* No. 10-cv-684, ECF No. 332 (Nov. 4, 2013). The Copyright Office responded and, not surprisingly, confirmed that it would have refused the registration in DeliverMed's favor had it known that DeliverMed did not own the work at the time. *See* No. 10-cv-684, ECF No. 337 at 3 (Jan. 23, 2024) ("[H]ad the Office been aware . . . Ms. Deeter had not transferred an interest in the Work by written agreement to DeliverMed, the Register would have refused to register the Work in response to the Application[.])". Thereafter, the district court invalidated the registration. *Id*., ECF No. 338 (Jan. 30, 2014).

Indeed, district courts have repeatedly confirmed that ownership misrepresentations such as this must be referred to the Copyright Office. *See, e.g.*, *Tecnoglass, LLC v. RC Home Showcase, Inc.*, No. 16-cv-24328, 2018 WL 11353287, at *4–5 (S.D. Fla. Sept. 18, 2018) (referring to the Copyright Office the plaintiff's inaccurate representation that a "written agreement" with the author confirmed the plaintiff's ownership, but no such "written agreement" existed); *Williams v. Hy-Vee, Inc.*, 661 F. Supp. 3d 871, 888–89 (S.D. Iowa 2023) (author's inaccurate ownership representation warranted referral where evidence revealed the author had previously assigned the work to someone else); *PalatiumCare, Inc. v. Notify LLC*, No. 22-cv-217, 2023 WL 2929462, at *9 (E.D. Wis. Apr.

7

13, 2023) (referring authorship inaccuracy to the Copyright Office where the work was claimed as a "work made for hire" but it came to light that third-party developers contributed to the work and the "hire agreements" with the developers were insufficient to claim a "work made for hire").

Here, Roadget twice falsely told the Copyright Office it was the owner of the Swag Bear work (on June 3, 2022 and again just over a year later on June 13, 2023), and falsely told the Copyright Office on June 13, 2023 that it had obtained the Swag Bear rights by a written transfer agreement with Guangzhou Shein. Roadget's ownership claims were demonstrably false. The July 13, 2023 Deed of Assignment between Roadget and Guangzhou Shein confirms that as of July 13, 2023, "[Guangzhou Shein] [was] the owner of the Copyright." ECF No. 52-3 (recital). And the Deed of Assignment purports to assign the Swag Bear work from Guangzhou Shein to Roadget as of July 13, 2023. *See* ECF No. 52-3 § 2.1 (assignment "with effect from the date of this Assignment [July 13, 2023]"). Thus, Roadget's ownership representations to the Copyright Office in the supplementary registration a month earlier (and in the basic registration 13 months earlier) were plainly false, even under Roadget's own version of the events. Like in *DeliverMed*, "[t]he fact that [Roadget and Guangzhou Shein] later entered into an [assignment] agreement does not transform [the] earlier [ownership] misrepresentation into a true statement." 734 F.3d at 623.

### C. Roadget's False Ownership Representations to the Copyright Office Were Made With Knowledge That They Were False.

The Supreme Court has confirmed that "knowledge" of an inaccuracy under 17 U.S.C. § 411(b)(1) can be shown by actual knowledge or willful blindness. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 948 (2022).[2] There is ample evidence to find that Roadget

---

[2] Roadget was provided an opportunity to explain this ownership inaccuracy in the PI briefing. *See* ECF No. 54 at 5 (reply brief submitting the Deed of Assignment). Roadget instead took great effort to prevent further briefing on the topic, asserting that the Court had all the evidence it needed to establish Roadget's ownership based only on the Deed of Assignment. *See* ECF No. 57 at 2 (opposing sur-reply; arguing, "A full set of documents is already before the Court, and Defendants' sur-reply would not help the Court evaluate those

knew it was not the owner of the Swag Bear work when it falsely stated it was to the Copyright Office. Jeffrey Yee was Roadget's "authorized agent" who filed and certified the June 13, 2023 supplementary registration that included the inaccuracy. *See* ECF No. 5-2. While it can (and should) be inferred from the circumstances that Roadget and Mr. Yee knew (or were willfully blind of the fact) that Roadget did not own the Swag Bear rights at that time—after all, the Deed of Assignment purporting to assign those rights was not executed until a month later—Mr. Yee has confirmed that he actually knew the ownership claim was false at the time it was made.

Specifically, Mr. Yee confirmed that throughout February 2023 and May 2023 (the months leading up to the June 13, 2023 Swag Bear supplementary registration), he "***knew***" Guangzhou Shein had not assigned its copyrights to Roadget, but that Guangzhou Shein purportedly "***would assign***" its copyrights at some time in the future, at which point Roadget "***would be***" the owner:

> At the time I filed [28 copyrights applications dated between February 2023 and May 2023], it was the intention that [Guangzhou Shein], the author of the works at issue, ***would assign*** all rights in the works to Roadget. ***I knew*** that Roadget ***would be*** the ultimate owner of the copyrights in the works at issue through written transfer agreement. That is why I advised the Copyright Office in my applications that Roadget was the claimant by written transfer agreement.

Chen Decl., Ex. A at ¶ 6 (emphasis added); *Id.*, Ex. B (list of copyright applications).

Mr. Yee admits here that he "knew" in the months leading up to the Swag Bear supplementary registration on June 13, 2023 that Roadget was ***not*** the owner of the Guangzhou Shein-owned copyrights, but that at some unknown time in the future, such copyrights (including the Swag Bear work) purportedly "would be" assigned from Guangzhou Shein to Roadget. Yet when Mr. Yee filed the Swag Bear supplementary registration on June 13, 2023, subjectively knowing that Guangzhou Shein was the alleged owner of the rights (not Roadget), he still falsely

---

documents."); *see also* ECF No. 54 at 5 (Roadget asserting the "Deed of Assignment assigning the rights to the design to Roadget . . . establish[es] Roadget's rights to the 'Swag Bear' design.").

told the Copyright Office that Roadget owned it pursuant to an executed "written agreement."

Significantly, Mr. Yee must have reviewed the Swag Bear chain-of-title, design, and publication to have recognized the basic registration included inaccuracies, including the inaccurate claim in the basic registration that Roadget was the "author" of the work and the inaccurate claim that the work was first published in China. Yet, with full knowledge of the facts and having done enough diligence to recognize the inaccurate claims of authorship and publication, and the need to correct them, Mr. Yee still falsely told the Copyright Office that Roadget was the owner by an executed "written agreement." Roadget's false ownership claim remains in the supplementary registration to this day. And it is the same false ownership basis on which Roadget subsequently filed this action and immediately invoked the Court's extraordinary authority to issue an *ex parte* TRO asset freeze of all of Defendants' accounts.

Despite the clear evidence that Roadget's false claim of ownership was knowingly made, Defendants anticipate Roadget will nevertheless respond by claiming that this was a good faith mistake that should be excused. But that argument should be rejected. The Supreme Court has noted that the "complexity of the relevant rule" weighs heavily in determining whether an inaccuracy was made knowingly or based on a good-faith mistake of law or fact. *See Unicolors*, 142 S. Ct. at 948 (addressing complex copyright regulation where a claimant can file a single registration for multiple works "included in the same unit of publication"). Thus, the simpler the rule, the less room to claim good-faith mistake. Copyright applicants cannot bury their heads in the sand when it comes to straightforward ownership issues. *See Williams*, 661 F. Supp. 3d at 887, 890 (finding author "cannot credibly claim he did not know he transferred this right" to "publicly display" a mural where he assigned the mural work to the building owner on which the mural was "publicly" displayed).

10

Here, the issue is simple: Roadget either had acquired the Swag Bear copyright by an executed "written agreement" by June 13, 2023 (as it told the Copyright Office) or it had not. This is not a nuanced, murky, or complex area of copyright law. Indeed, one court in the Seventh Circuit has flatly rejected a "good-faith mistake" arguments on basic ownership issues, even for a "work made for hire" issue that is more complex than the simple ownership issue Roadget was faced with:

> In contrast with the rather murky state of the case law as to what qualifies as a derivative work or compilation, here the statutory language set out clear requirements PalCare had to meet in order to lawfully characterize the [work] as work made for hire. It is thus harder to accept that PalCare made a good-faith mistake of law in failing to execute proper work for hire agreements with the three developers.

*PalatiumCare*, 2023 WL 2929462, at *9 (record citations omitted). Roadget cannot plausibly claim mistake of law or fact to excuse its failure to truthfully disclose whether it owned the Swag Bear work. The evidence shows Roadget knew that it did not own the Swag Bear work when it falsely told the Copyright Office that it had acquired those rights by an executed "written agreement."

## IV. CONCLUSION

Based on the foregoing, the Motion should be granted, and the Court should issue the "[Proposed] Request to the Register of Copyrights Pursuant to 17 U.S.C. § 411(b)(2)" submitted via email per the Court's procedures.[3]

---

[3] Defendants note that the Swag Bear registrations contain other inaccuracies that are not raised by the instant Motion. For example, as noted in Defendants' Opposition to Roadget's PI Motion, a product depicting the "Swag Bear" work was listed on Amazon.com in January 2021, which pre-dates Roadget's claimed first-publication date (March 2022) by over a year. *See* ECF No. 38 at 5; ECF 38-4 at Ex. II. Roadget did not dispute or otherwise respond to this issue in its Reply brief to the PI briefing. *See Magee v. Portfolio Recovery Assocs., LLC*, No. 12-cv-1624, 2014 WL 12998445, at *5 (N.D. Ill. Oct. 17, 2014) ("failure to address" briefed issue "as a tacit admission"). If this case proceeds, Defendants will investigate the nature of this inaccuracy and the extent to which Roadget knowingly misrepresented the first-publication date to the Copyright Office in its applications, and if appropriate, Defendants will raise it to the Court by a similar motion under 17 U.S.C. § 411(b)(2) in due course.

Dated: March 5, 2024                                  Respectfully Submitted,

/s/ William W. Flachsbart

Christopher J. Fahy
ARCH & LAKE LLP
203 N. LaSalle St., Ste. 2100
Chicago, IL 60601
Phone: 312-558-1369
Fax: 312-614-1873
Christopher@archlakelaw.com

*Counsel for Defendants*

Haoyi Chen
ARCH & LAKE LLP
2500 Wilcrest Dr.
Houston, Tx 77042
Phone: 346-335-9870
Fax: 312-614-1873
haoyichen@archlakelaw.com

*Counsel for Defendants*
*Pro hac vice* forthcoming

William W. Flachsbart
DUNLAP BENNETT & LUDWIG
333 N. Michigan Ave. Suite 2700
Chicago, Illinois 60601
Phone: 312-551-9500
wflachsbart@dbllawyers.com

*Counsel for Defendants*