**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROADGET BUSINESS PTE. LTD., a private limited company organized in the country of Singapore,<br><br>              Plaintiff,<br><br>     v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO<br><br>              Defendants. | CIVIL ACTION NO. 1:23-cv-16262<br><br>Judge: Hon. Jeffrey I. Cummings |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR REFERRAL TO THE
REGISTER OF COPYRIGHTS UNDER 17 U.S.C. § 411(b)(2)**

1

I.  **INTRODUCTION**

The parties agree that if Roadget made a knowingly false ownership claim in its registration, then the Court must refer the matter to the Copyright Office for a determination of whether the registration would have been refused had the misrepresentation been known. Roadget does not dispute that there was an inaccurate claim of ownership in the supplementary registration, nor does Roadget dispute "knowledge" of the inaccuracy. Roadget's opposition also fails to meaningfully attempt to address the Seventh Circuit's decision in *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 623 (7th Cir. 2013), a case with nearly identical facts and a holding consistent with Defendants' requested relief here.

Roadget admits that its original registration inaccurately listed Roadget as the owner and that it "corrected" that error via a supplementary registration in which Roadget knowingly represented ownership via a written agreement that did not exist. To avoid referral however, Roadget argues its copyright agent, Jeffrey Yee, a senior IP lawyer with three decades of experience, made an alleged "mistake of law" in that he purportedly did not know that telling the Copyright Office that Roadget owned the copyright via a written agreement meant that there actually had to be a written agreement. This position is untenable, and Roadget tellingly does not provide any evidence from Mr. Yee or anyone else to support its position. The Court's role is to assess only whether there is an inaccuracy and whether the inaccuracy was known to the applicant at the time of the application. If so, then the Court "shall" refer the matter to the Copyright Office to determine what the Register would have done at the time of the application had it known of the misrepresentation. Here, it is undisputed that Roadget made a knowingly inaccurate ownership claim, and therefore the Court must refer the matter to the Copyright Office.

Roadget also asserts several other arguments, all of which fail. Roadget argues that because

there is allegedly no dispute over ownership and because it later entered into a written agreement, there is a lack of prejudice. But the Seventh Circuit has already confirmed that these issues play no role in the Court's assessment of whether to refer the matter to the Copyright Office, and a *valid* copyright is needed for Roadget to have standing to bring this suit, the lack of which causes prejudice to the Defendants.

## II. ARGUMENT

### A. Roadget Concedes It Made a Knowing Misrepresentation in the Supplementary Registration.

While Roadget correctly notes that more than a "bare allegation" of a knowing misrepresentation is needed before referring to the Copyright Office, ECF No. 67 at 2, Defendants have more than substantiated the existence of a knowing misrepresentation. Roadget does not deny that Defendants put forth evidence that Roadget told the Copyright Office it owned the Swag Bear work via a written agreement that did not exist. Roadget's own documentary evidence has unquestionably confirmed this. Roadget also does not and cannot plausibly deny that it *knew* the written agreement did not exist at that time. This is not a "bare allegation." Mr. Yee's declaration submitted by Roadget in a prior case confirms Roadget and Mr. Yee "knew" that the Guangzhou Shein-Roadget global assignment agreement was not executed in the months leading to the filing of the Swag Bear supplementary registration. ECF No. 63-2 ¶ 6.[1]

While Roadget believed it would receive an assignment at **some point in the future**, it still falsely told the Copyright Office that it **already had** such an assignment. Roadget does not dispute any of this. This alone warrants referral to the Copyright Office under Seventh Circuit precedent addressing nearly identical facts. *See DeliverMed*, 734 F.3d at 623 (directing district court to refer

---

[1] Mr. Yee's declaration also admits Roadget made false ownership claims in at least 28 other copyright registrations, all requiring supplementary registrations to cure the false statements.

3

applicant's misrepresenting existence of "written ownership transfer agreement" even though "they eventually executed a transfer agreement" after filing the application). Thus, this is not an instance, as Roadget implies, of a defendant invoking Section 411(b) as a "delay" tactic without evidence of a knowing misrepresentation. Instead, Defendants here have ample evidence of a knowing misrepresentation (virtually the same evidence that caused the Seventh Circuit in *DeliverMed* to direct the district court to refer the matter) for the lone copyright registration that is the basis of this lawsuit. Like in *DeliverMed*, this misrepresentation likely makes the copyright invalid, depriving Roadget of standing to maintain this lawsuit. *See* No. 10-cv-684, ECF No. 337 at 3 (Jan. 23, 2024); ECF No. 338 (Jan. 30, 2014); *Mullen v. Society of Stage Directors*, 2007 WL 2892654 at *4 (N.D. Ill. Sept. 28, 2007) ("To prove copyright infringement, a plaintiff must first demonstrate the she owns a valid copyright.").

### B. Roadget's "Mistake of Law" Defense Fails.

Roadget concedes it made a knowing false statement of fact, but then argues that its misconduct should be excused because a "mistake of law" led to alleged "clerical errors" in the supplementary registration. ECF No. 67 at 3–4. Roadget says it "did not realize that the assignment agreement needed to be executed" when it filed a registration that represented an assignment had been executed. *Id*. at 4. Roadget illogically claims this is "consistent with confusion resulting from a mistake of law." *Id*. Yet Roadget fails to provide a declaration from Mr. Yee (or anyone else) to support this defense, and the Supreme Court has confirmed that "courts need not automatically accept a copyright holder's claim that it was unaware of the relevant legal requirements of copyright law." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 948 (2022).

Indeed, in response to a claim of "mistake of law," the Supreme Court instructs district courts to consider "[c]ircumstantial evidence, including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such

4

matters [that] may [] lead a court to find that an applicant was actually aware of, or willfully blind to, legally inaccurate information." 142 S. Ct. at 948. District courts have applied *Unicolors* to find that where the circumstances render the claimed mistake of law "implausible" or objectively "hard[] to accept," the matter is appropriately referred to the Copyright Office. *Oliver v. Meow Wolf*, Inc., No. 20-cv-237, 2022 WL 3682936, at *8 (D.N.M. Aug. 25, 2022); *PalatiumCare, Inc. v. Notify LLC*, No. 22-cv-217, 2023 WL 2929462, at *7–8 (E.D. Wis. Apr. 13, 2023).

As a starting point, in response to evidence of a knowing factual inaccuracy, Roadget had the burden to prove a plausible, good-faith mistake of law. *See PalatiumCare*, 2023 WL 2929462, at *7 ("bare assertion . . . without evidence" insufficient to claim "good faith mistake of law"); *DeliverMed*, 734 F.3d at 623 (7th Cir. 2013) (affirming district court's finding of knowing misrepresentation given plaintiffs "[did] not provide[] any evidence" in rebuttal). Yet Roadget does not submit a declaration of Mr. Yee (or anyone else) to explain the alleged "mistake of law," despite Defendants demonstrating that Mr. Yee admitted that he represented to the Copyright Office the existence of an agreement that he knew with certainty did not exist. Roadget's mistake-of-law defense fails on this ground alone.

Even assuming Mr. Yee believes he made a mistake of law—which is hard to accept given that he is employed as Roadget / Shein's Senior Counsel of Intellectual Property and Litigation, *see* ECF No. 62-3 ¶ 3; *see also* Judge Decl., Ex. B—Roadget's argument still fails for several additional reasons. **First**, Plaintiff's claimed mistake of law is implausible given the clarity and simplicity of the relevant rule. *See Unicolors*, 142 S. Ct. at 948 (instructing courts to consider "the complexity of the relevant rule"). Under this factor, the more complex or nuanced the rule, the more likely courts are to find a mistake of law; the clearer and simpler the rule, the less likely courts are to find a mistake of law.

5

It is hard to imagine a simpler requirement than knowing a written agreement must exist before representing its existence to the Copyright Office. Section 4 of the copyright application, titled "transfer ," requires any claimant who is not the author to "give a brief statement of how the claimant[] obtained ownership of the copyright." Judge Decl., Ex. A (copyright application form). The instructions preceding the application even provide examples for this section—*e.g.*, "By written contract," "By will," etc.—and the instructions specifically advise the applicant that the "transfer documents" do not need to be attached, necessarily implying that any transfer documents listed should exist at the time of application. *Id*. It is simply not believable that an experienced IP lawyer would read the application form and instructions and conclude that a "transfer statement" in a copyright application can assert a "written agreement" as the "statement of how the claimant[] obtained ownership" when no such written agreement existed.

Further belying the plausibility of Roadget's position, the Copyright Compendium addresses this point. *See Healthestate, LLC v. United States*, 168 Fed. Cl. 624, 652 (2023) ("[N]umerous courts have considered the clarity (or complexity) of the applicable guidance in the Compendium in analyzing § 411(b)(1)'s knowledge requirement.") (collecting cases). The Compendium provides that if the applicant even "suggests" that a "written agreement" has not been "signed by the copyright owner" at the time of registration, the Copyright Office will inquire further to find out if a written agreement has been signed. If there is no signed written agreement, then the Copyright Office will not accept the application, but instead will insist that the true owner must be named as the claimant.

> If the transfer statement states or suggests that the copyright was transferred to the claimant by oral agreement, the registration specialist will communicate with the applicant to determine whether the agreement was confirmed in a written document signed by the copyright owner. If so, the specialist will ask the applicant for permission to amend the transfer statement to read "by written agreement."
>
> If the oral agreement has not been confirmed in writing, the specialist will ask the

applicant for permission to name the author of the work as the sole copyright claimant.

COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICE § 620.10(C)(1) (3d ed. 2021) (available at www.copyright.gov/comp3/docs/compendium.pdf).

This is not a nuanced subject—the signed transfer agreement either existed or did not exist. *See PalatiumCare*, 2023 WL 2929462, at *9–10 (contrasting "rather murky state of the case law as to what qualifies as a derivative work or compilation" with the "clear requirements" of what qualifies as a "work made for hire" agreement; and finding it is "hard[] to accept that [the applicant] made a good-faith mistake of law in failing to execute proper work for hire agreements with the three developers"); *Oliver*, 2022 WL 3682936, at *6–8 (contrasting complex regulations governing "unpublished group or collections of works," which the court viewed as "area of copyright law [] esoteric enough that a layperson could plausibly misunderstand it," with the basic "authorship" questions for which it is "wholly implausible," even for a layperson, to claim ignorance).

Not surprisingly, several courts, including the Seventh Circuit, have confirmed that this is precisely the type of inaccuracy that warrants such a referral. *See DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 623 (7th Cir. 2013) (directing district court to order referral of applicant's misrepresenting existence of "written ownership transfer agreement" even though "they eventually executed a transfer agreement" a week after filing the application); *Tecnoglass, LLC v. RC Home Showcase, Inc.*, No. 16-cv-24328, 2018 WL 11353287, at *4–5 (S.D. Fla. Sept. 18, 2018) (referring the plaintiff's inaccurate representation that a "written agreement" with the author confirmed the plaintiff's ownership, but no such "written agreement" existed).[2]

**Second**, in conjunction with the complexity of the relevant rule, the Supreme Court also

---

[2] Some courts even go as far as to say that "[f]alse statements of ownership or authorship in a work render a copyright registration invalid as a matter of law." *Canadian Standards Ass'n v. P.S. Knight Co., Ltd.*, 649 F. Supp. 3d 334, 354–55 (W.D. Tex. 2023).

guides district courts to assess "the applicant's experience with copyright law." *Unicolors*, 142 S. Ct. at 948. A layperson may be given more leniency in misunderstanding complex or moderately complex rules, *Oliver*, 2022 WL 3682936, at *8 (excusing non-attorney layperson from "esoteric and potentially confusing" copyright rules, but not for "very basic" authorship and ownership rules), but an "experienced intellectual property attorney[] certify[ing] the applications" will be held to a higher standard. *See Tecnoglass*, 2018 WL 11353287, at *4–5 (granting referral motion and concluding easily that experienced IP attorney "knowingly submitted inaccurate information related to ownership of the copyrights in its applications for registration"). Here, Roadget is a sophisticated ultra-fast fashion company with a substantial IP portfolio[3] that employed a highly experienced copyright lawyer who certified the application. *See* ECF No. 63-2 (Mr. Yee is Roadget's "Senior Counsel of Intellectual Property Litigation"); Judge Decl., Ex. B (Mr. Yee's California State Bar and LinkedIn profile showing nearly 30 years of law practice, decades of IP experience, and noting "extensive experience in all aspects of intellectual property" including "copyright [] prosecution").

Roadget therefore cannot plausibly claim that a good-faith mistake of law, or some "clerical error" as it states in its Response. This was not a typographical error or checking the wrong box on a form; Roadget and Mr. Yee concede that they knew *Guangzhou Shein* owned the Swag Bear work on June 13, 2023, yet they falsely told the Copyright Office that *Roadget* owned it on that date by a written agreement. These sophisticated parties, who are well-versed in copyright law, were faced with a straightforward instruction to truthfully explain basic ownership facts, and they should not be allowed to ignore the registration requirements and "dup[e] the Copyright Office into issuing a certificate of registration based on a false claim of copyright ownership." *DeliverMed*, 734 F.3d at 622. Roadget's mistake-of-law defense should be rejected.

---

[3] *See* ECF No. 10-1 (Wei declaration describing Roadget's IP portfolio).

### C. Roadget's Remaining Arguments Fail.

Roadget's additional arguments are equally unavailing.

*First*, Roadget argues the misrepresentation to the Copyright Office is cured by a post-registration transfer, but the Seventh Circuit has squarely addressed and resolved this issue, confirming that subsequently executing a transfer agreement to the inaccurately identified "owner" does not cure the misrepresentation to the Copyright Office. *See DeliverMed*, 734 F.3d at 623 ("Although they eventually executed a transfer agreement, this happened a week after DeliverMed filed its registration application. The fact that the parties later entered into an agreement does not transform [the] earlier misrepresentation into a true statement.").

*Second*, Roadget asserts that its relationship with Guangzhou Shein and the alleged lack of a dispute over ownership obviates the need for referral to the Copyright Register. ECF No. 67 at 5.[4] Roadget cites no law for this proposition, which would encourage a lack of diligence related to reporting ownership transfers between affiliated entities, and the Copyright Compendium makes clear that a relationship between the parties is not a substitute for a proper written transfer agreement. COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICE § 620.10(C) and 620.10(C)(3) (3d ed. 2021) ("As a general rule, the U.S. Copyright Office will not accept a transfer statement that merely describes the relationship between the author and the claimant without specifying how the claimant obtained ownership of the copyright"). And the Seventh Circuit has also rejected this position. In *DeliverMed*, the plaintiff (DeliverMed) filed the application claiming ownership via a written agreement. The true owner and DeliverMed had no dispute between themselves that ultimately DeliverMed would own the copyright, and the parties thereafter executed several assignment agreements to correct the inaccuracy retroactively to make DeliverMed the owner. *See DeliverMed*,

---

[4] Roadget provides no evidence that Guangzhou Shein does not dispute ownership of the Swag Bear work.

9

734 F.3d at 621; *see also* No. 10-cv-684, ECF No. 287 at 23 (S.D. Ill. Oct. 15, 2012) (district court findings of fact and conclusions of law). In other words, just like Roadget asserts in this case, there was no dispute between the parties regarding ownership, but rather only, as Roadget puts it, a dispute as to "when that transfer occurred relative to the registration of the copyright." ECF No. 67 at 5.

The *DeliverMed* ruling shows that the inaccuracy here cannot be retroactively corrected. Both the district court and the Seventh Circuit agreed that this misrepresentation still warranted a referral to the Copyright Office. *Id.*; *see also Williams v. Hy-Vee, Inc.*, 661 F. Supp. 3d 871, 889 (S.D. Iowa 2023) (referring ownership misrepresentation even where the true owner submitted an affidavit asserting that the parties "understood" the transfer agreement to reserve rights to the author).

**Third**, Roadget's argument that the misrepresentation "prejudices no one" (ECF No. 67 at 5) is wrong—defendants subjected to a claim for statutory damages for allegedly infringing a copyright with an invalid registration are certainly prejudiced—and has been rejected by the Seventh Circuit. In *DeliverMed*, the plaintiff made the same argument, and the Seventh Circuit, recognizing the congressional mandate to refer knowing inaccuracies to the Copyright Office, confirmed that "[p]rejudice has no relevance" to the referral decision under Section 411(b)(1). *See* 734 F.3d at 625 n.3. This makes sense. Under the statute, the district court's role is only to assess whether a knowing inaccuracy was submitted to the Copyright Office. To the extent Roadget believes the false claim was not "material" or "prejudicial," the Copyright Office is tasked with addressing that issue as part of the referral process. *Id.* at 624.

**Fourth**, citing to an out-of-circuit decision from the District of Minnesota purportedly construing *DeliverMed*, Roadget claims that a Section 411(b)(2) referral requires proof of

10

"intentional fraud." ECF No. 67 at 2, 4. To the contrary, *DeliverMed* made clear that a referral under Section 411(b)(2) only requires a showing that "(1) the registration application included inaccurate information; and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office." 734 F.3d at 625. And at least one district court within the Seventh Circuit has construed *DeliverMed* as limiting the inquiry to a knowing inaccuracy, at which point the matter should be referred to the Copyright Office. *See Art of Design, Inc. v. Pontoon Boat, LLC*, No. 3:16-cv-595, 2019 WL 3749990, at *3 (N.D. Ind. Aug. 8, 2019) ("express[ing] no opinion on whether" the defendant must ultimately "show intent to defraud the Copyright Office to defeat an infringement claim" later in the proceedings; but holding that "[f]or purposes of seeking an opinion from the Register, the Court finds sufficient evidence that the registrant 'knowingly included the inaccuracy in his submission to the Copyright Office.'" (quoting *DeliverMed*, 734 F.3d at 625)); *see also Tecnoglass*, 2018 WL 11353287, at *4 ("[R]equiring a party to establish scienter prior to referral . . . would in many cases render section 411(b)(2)'s referral procedure meaningless."); *dmarcian, Inc. v. DMARC Advisor BV*, 2023 WL 3971433, at *4-5 (W.D.N.C. June 12, 2023) (finding that to require a showing of scienter before § 411(b)(2)'s mandatory referral was triggered "would require a factual determination that is improper" at a motion to refer stage).

*Lastly*, Roadget claims that its misrepresentation is "error [that] is easily fixed through a further supplement[ary] registration." ECF No. 67 at 4. But the *theoretical* ability to fix the inaccuracy does not absolve the Court's statutory duty to refer the inaccuracy to the Copyright Office through the Section 411(b)(2) procedure, and Roadget cites no legal authority for that proposition. Indeed, even if Roadget attempted to fix the inaccuracy through a "further supplementary registration," the referral is still required in the interim. *See PalatiumCare*, 2023 WL 2929462, at *9 ("The Register may still, of course, find that the initial misidentification of

11

authorship was immaterial and proceed to accept PalCare's supplementary registrations, but that is for the Register to decide."). In any event, this inaccuracy cannot be cured by further supplementary registration. Roadget cites to the Compendium section on supplementary registrations (ECF No. 67 at 4), but overlooks Section 1802.4, titled "Records That Cannot Be Corrected or Amplified with a Supplementary Registration," which expressly states that "[a] supplementary registration cannot be used to correct . . . the information in another supplementary registration." COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICE § 1802.4 (3d ed. 2021) (available at www.copyright.gov/comp3/docs/compendium.pdf).[5]

### III.  CONCLUSION

Based on the foregoing, the Motion should be granted, and the Court should issue the "[Proposed] Request to the Register of Copyrights Pursuant to 17 U.S.C. § 411(b)(2)" submitted via email per the Court's procedures.[6]

---

[5] Roadget's only options to "fix" the error at this point are: (1) Roadget can invoke the "voluntary cancellation" procedures under COMPENDIUM § 1807.4(E) based on a "substantive defect in the registration," or (2) Roadget can ask the Copyright Office to disregard the supplementary registration and rely solely on the basic registration. *See* COMPENDIUM § 1802.4. But Roadget cannot invoke the latter procedure because the basic registration also includes inaccurate ownership information.

[6] In addition to the evidence of a knowing misrepresentation regarding the written agreement, Defendants noted an Amazon listing for a t-shirt with the Swag Bear design that was live in 2021, a year before the stated initial publication date in supplementary registration. ECF No. 63 at 11 n.3. In Roadget's opposition to the instant motion, Roadget does not deny the inaccuracy (though it could have), but instead only points to the lack of explicit product reviews for the product before 2022, which does nothing to suggest the product listing date of 2021 is wrong.

Dated: April 3, 2024            Respectfully Submitted,

/s/ William W. Flachsbart

Christopher J. Fahy
ARCH & LAKE LLP
203 N. LaSalle St., Ste. 2100
Chicago, IL 60601
Phone: 312-558-1369
Fax: 312-614-1873
Christopher@archlakelaw.com

*Counsel for Defendants*


Haoyi Chen
ARCH & LAKE LLP
2500 Wilcrest Dr.
Houston, Tx 77042
Phone: 346-335-9870
Fax: 312-614-1873
haoyichen@archlakelaw.com

*Counsel for Defendants*
*Pro hac vice* forthcoming


William W. Flachsbart
DUNLAP BENNETT & LUDWIG
333 N. Michigan Ave. Suite 2700
Chicago, Illinois 60601
Phone: 312-551-9500
wflachsbart@dbllawyers.com

*Counsel for Defendants*